IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01723-RBJ

HIGH COUNTRY CONSERVATION
ADVOCATES, WILDEARTH GUARDIANS,
and SIERRA CLUB

      Plaintiffs,

v.

UNITED STATES FOREST SERVICE,
UNITED STATES DEPARTMENT OF
AGRICULTURE, BUREAU OF LAND
MANAGEMENT, UNITED STATES
DEPARTMENT OF THE INTERIOR,
DANIEL JIRON, in his office capacity as
Regional Forester for the U.S. Forest Service's
Rocky Mountain Region, SCOTT
ARMENTROUT, in his official capacity as
Supervisory of the Grand Mesa, Uncompahgre,
and Gunnison National Forests, and RUTH
WELCH, in her official capacity as the Bureau
of Land Management's Colorado State Office
Director,

      Defendants, and.

ARK LAND COMPANY, INC., and
MOUNTAIN COAL COMPANY, L.L.C.,

      Intervenor-Defendants

**INTERVENORS' BRIEF ON REMEDIES**

I.     ARGUMENT

Intervenors Ark Land Company, Inc., and Mountain Coal Company, L.L.C., (collectively "Arch") support the relief requested by the Federal Defendants. Arch addresses this memorandum to three issues: (1) the scope of any injunction that may survive final judgment, (2) the undue burden associated with vacatur of the Lease Modification Approvals and or any portion of the Colorado Roadless Rule ("CRR"), and (3) Plaintiffs' request that the Court vacate the North Fork Coal Mining Area Exception to the Colorado Roadless Rule, 36 C.F.R. 294.43(c)(1)(ix) ("North Fork Exception").

**A.     Injunctive Relief**

As Arch explained in its Brief on the Merits, exploration of the Lease Modifications is essential both to evaluation of the specific environmental consequences of mining, and for development of approvable mine plan. Without exploration, mining in the Lease Modifications is as a practical matter precluded. While reserving all appeal rights, Arch does not oppose vacating the Exploration Plan pursuant to 5 U.S.C. § 706 as appropriate relief for its findings on the merits, as the Court suggested it would do in its June 27 Order, at 35 [Doc. #71].

Arch further notes, however, that to the extent any injunctive relief regarding the Exploration Plan (or other activities in the Lease Modifications) is issued or continued in conjunction with final judgment, the Court should carefully tie its injunction to activities enabled by the respective *decisions*, rather than activities generally. For example, in its Order the Court enjoined "*proceeding with the Exploration Plan* in any matter than involves the construction, bulldozing, or other on-the-ground, above-ground, or below-ground disturbing activity in the subject area." Order at 35 (emphasis added). Going forward, there are activities in the Lease

Modifications that may be proposed that do not trigger Forest Service regulations at all, e.g., below-ground activities, or that do not trigger the CRR, e.g., surface activities that do not involve road-building.  Such activities may or may not require new authorizations, but Arch wishes to ensure that they are not swept up in or inhibited by judicial relief that extends beyond the specific decisions adjudicated in this litigation.  Arch believes that the injunctive relief proposed by the Federal Defendants' protects against this risk, and simply highlights the issue in the event the Court carries injunctive relief forward in a manner that may depart from the Federal Defendants' proposal.

**B.      Vacatur of the Lease Modification Approvals and CRR is Unduly Burdensome**

Arch understands that the Federal Defendants will explain that vacatur of the Lease Modification Approvals 13cvand CRR is not required by law, and is unnecessary.  In that context, any burden associated with vacatur that is over and above the burdens of injunctive relief is by definition undue.  As to the Lease Modifications, the extensive procedures for leasing have been undertaken, see 40 CFR Parts 3000 and 3400, most of which of were completely uncontroversial, and Arch has already paid nearly $1 million in lease payments.  Vacatur would require a refund, and starting the leasing process from scratch in the event that the Federal Defendants re-affirm the decision to lease following supplemental NEPA review.  This would all be wasted expense and effort if the Federal Defendants reach the same conclusion.  In contrast, should the Federal Defendants reach a different conclusion at the completion of supplemental NEPA review, any rejection of the lease application or other changes could be implemented in a new decision.  Vacatur imposes burdens that injunctive relief does not, and is therefore not an appropriate remedy in light of the effective relief available through an injunction.

These concerns are multiplied many times over regarding the CRR. While the extent of the chaos will depend on what aspects of the CRR are vacated, *see* Section C, *infra*., many interests that are not parties to this litigation have relied on the CRR for planning and projects since its promulgation in July 2012. These will be disrupted enough by an injunction. It is inappropriate to compel a new rulemaking, given the investment made in the original, *see Ark Land Initiative v. Tidwell*, 230 F.Supp.2d 230, 233-35 (D.D.C. 2012), where there is a less burdensome interim alternative that protects Plaintiffs' interests until supplemental NEPA review is complete and the Forest Service determines its course forward.

The case for an injunction over vacatur of the CRR is particularly compelling when one considers the flaws the Court found in the environmental review of the CRR. These are all variants on a single error – the Forest Service's determination to *defer* analysis of climate change costs to site-specific proposals. In the specific context of the Lease Modifications, this proved to be a material error, because the Court also found fault with the site-specific climate change analysis. But that may not be true of other projects, and it would be inequitable to overturn those projects for an error that was not replicated there. This distinction highlights the central problem with vacatur as a remedy for the specific error committed by the Forest Service, which is that vacatur is irremediable in a way that injunctive relief is not. Once the Court vacates all or part of the CRR, the only remedies are either reversal on appeal or a new rulemaking. In contrast, an injunction affords the Court the opportunity to modify its terms as to specific projects that may not have exhibited the same problems. On the appropriate facts, there is no reason the Court could not allow a specific project to go forward where the climate change analysis for that

project is adequate. Such tailoring is not possible if the relevant provisions of the CRR are vacated.

Plaintiffs would no doubt counter that if the Court does not require the Federal Defendants to start over, the Federal Defendants will be too invested in the prior decisions and any supplemental NEPA review will be tainted by the dreaded "bureaucratic steamroller" effect. *Davis v. Mineta,* 302 F.3d 1104, 1115 n. 7 (10th Cir. 2002). But this misreads *Davis*. In *Davis*, the agencies proposed to *proceed with construction* on the project while supplemental environmental review proceeded. The Court found that such an approach compounded the prior error and was incompatible with the NEPA regulations. *Id.* In contrast, here the Defendants are not proposing to do any further work during the pendency of supplemental NEPA review, but are simply requesting a remedy that will not compel them to undo, and then perhaps redo, prior administrative proceedings unnecessarily. Where there are no environmental harms or prejudice to Plaintiffs from such an approach, and it may conserve administrative and party resources, an injunction pending supplemental environmental review is a reasonable remedy.

**C.     If Vacatur is Ordered, What of the CRR must be Set Aside**

In its Order, the Court expressed a sense that it had a duty to "vacate non-compliant agency action," Order at 35, and Arch understands that Plaintiffs will advocate a similar remedy. The Federal Defendants explain that vacating the decisions is not required by law and is unnecessary. In addition to the fact that such relief is superfluous in the context of the Lease Modification and Exploration Plan decisions, as articulated by the Federal Defendants, the scope of any vacatur is by no means clear. As the Court noted in its Order, the CRR was the result of careful trade-offs and bargaining that significantly enhanced roadless protections throughout the

State in exchange for modified restrictions on coal development in the North Fork Coal Mining Area.  Order at 6-7.  The North Fork Exception is not an isolated, stand-alone provision, but part of an interconnected state-wide network of policy choices.  Consequently, the Court must carefully consider whether it can only vacate 36 C.F.R. 294.43(c)(1)(ix), whether it must also vacate other provisions that are premised on the implementation of 36 C.F.R. 294.43(c)(1)(ix), or whether it must vacate the entire CRR.

### (1).  Severability Principles

In the statutory context, severability is subject to a two-part inquiry. First, the Court examines whether the legislature would have intended the remainder of the statute to remain in force if the invalid provision is excised.  Second, the Court must examine whether the remainder of the statute would be "fully operative as law," if the defective provision is severed.  *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 680 (1987); *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 130 S. Ct. 3138, 3161 (2010).

While severability analyses in the context of rulemakings are much less frequent, these employ a similar test.  *K-Mart Corp. v. Cartier*, 486 U.S. 281, 294 (1988).  The Tenth Circuit has held that courts "may partially set aside a regulation if the invalid portion is severable.  A regulation is severable if the severed parts "'operate entirely independently of one another,' and the circumstances indicate the agency would have adopted the regulation even without the faulty provision." *Arizona Public Service Co. v. USEPA*, 562 F. 3d 1116, 1122 (10th Cir. 2009) (*citing Davis County Solid Waste Mgmt. v. EPA,* 108 F.3d 1454, 1459 (D.C. Cir. 1997).

The CRR contains a severability clause. 36 CFR § 294.48(f).  This creates a "presumption of severability," but must give way to evidence of a regulatory structure or intent that the regulation would not have passed without the invalid provision. *Alaska Airlines,* 480 U.S. at 686.  Ultimately, the "determination of severability will rarely turn on the presence or absence of [a severability clause]."

*Community for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1394 (D.C. Cir. 1990) (*quoting United States v. Jackson*, 390 U.S. 570, 585 n.27 (1968)).

### (2).   The CRR Outside the North Fork Coal Mining Area Can Likely Survive Without the North Fork Exemption

There is little doubt that in the absence of the North Fork Exception, the CRR outside the North Fork Valley would be "fully operational as law." By its terms the North Fork Exception applies only to the 19,100 acres comprising the North Fork Coal Mining Area, and excision would not impair the function of the CRR in the remainder of the state.

Regulatory intent is a much closer question. As the Court noted, the CRR overall reflected a very careful balancing of interests and trade-offs; the Court expressly noted that the fact that "nobody got everything they wanted" is an indication of a successful political process. Order at 25. Indeed, the Forest Service specifically created and increased the scope of the more protective "Upper Tier" roadless protections to "offset" and "balance" the road building allowed by the North Fork Exception and other state-specific changes. 77 Fed. Reg. 39582, 39589. The Court opined that this consideration is "more or less beside the point in this litigation," Order at 25, which is correct as to the merits, but is not correct as to severability. Because severability turns crucially on an assessment of the regulatory bargaining and the "but-for" landscape, the fact that the CRR was the product of such "collaborative compromise-oriented policymaking" indicates that Plaintiffs cannot selectively overturn one element of the compromise without "breaking the deal." This is particularly true because hundreds of thousands of acres of Colorado, outside the North Fork Valley, that were previously open to mineral development were effectively closed as a result of the CRR. In that sense, the North Fork Exception reflects a state-wide bargain because of what industry gave up in exchange for a more favorable

development environment in the North Fork Coal Mining Area. There is no way to avoid the statewide aspect of the deal-making.

Nevertheless, Arch does not advocate that the entire CRR be set aside. The CRR represents an enormous investment of agency, public, and industry resources to improve upon the Colorado-specific implications of the original 2001 Roadless Rule. There are two considerations that can save the CRR outside the North Fork Coal Mining Area. First, while not dispositive, the severability clause does weigh in support of severance. Second, the coal potential outside the North Fork Coal Mining Area is much more inchoate than inside the North Fork Coal Mining Area. The CRR FEIS provided a map of coal resources outside the North Fork Coal Mining Area, CRR-0154486, and characterized the coal as a "known resource base," CRR-0153367, but cautioned that the extent of resources is undetermined. *Id.* In contrast, the North Fork Coal Mining Area contains three long-running mining operations with better-estimated adjacent reserves. *Id.* Given the wide extent of coal resources in Colorado generally, *see* CRR FEIS Map 10 (CRR-0154486), there is little doubt that potentially important resources have been foreclosed by the change in boundaries from the Inventoried Roadless Areas ("IRAs") to new Colorado Roadless Areas ("CRAs"), but coal mining presently occurs exclusively in the North Fork Coal Mining Area. CRR-0153358. Moreover, because the North Fork Exception is limited to coal mining, the lost opportunities to mine coal associated with expansion of roadless areas outside the North Fork Valley is confined to the coal industry. Overall, the circumstances do not indicate that the Forest Service would have abandoned or substantially modified the CRR as applied to areas of the state outside the North Fork Coal Mining Area, in the absence of the North Fork Exception. *Arizona Public Service Co.,* 562 F. 3d at 1122.

### (3). If the North Fork Exception is Vacated, the CRAs in the North Fork Coal Mining Area Must Also be Vacated

The North Fork Exception is an area-and-activity specific exemption from the CRR regulations otherwise applicable throughout Colorado. The North Fork Exception includes not only an allowance for temporary road construction and reconstruction in CRAs in the North Fork Coal Mining Area, but imposes additional restrictions beyond the 2001 Roadless Rule. These include confining related infrastructure to road rights of way, and the provision that all roads must be temporary. 36 C.F.R. 294.43(c)(1)(ix). Any such roads are closed to the general public. 36 C.F.R. 294.43(c)(4). A description of the differences between the 2001 Roadless Rule and the North Fork Exception is provided at pages 70-79 and Table 3-9 of the CRR FEIS. CRR-0153357-CRR-0153369.

Closely intertwined with the North Fork Exception are the boundary changes of the CRAs in the North Fork Coal Mining Area from the 2001 Roadless Rule IRAs. These have the effect of withdrawing certain substantially altered acres from roadless protection, and extending roadless protection to other areas containing coal resources that were not eligible under the 2001 Roadless Rule. CRR-0153361-CRR-0153364. Thousands of acres are affected. *Id.*

Invalidation of the North Fork Exception is not severable from the other CRR provisions applicable to the North Fork Coal Mining Area. Specifically, in conjunction with promulgation of the North Fork Exception, the boundaries of roadless protection in the North Fork Coal Mining Area were revised, with the express understanding that the North Fork Exception would protect existing interests. In the case of the existing North Fork coal mining operations, the Forest Service recognized that the mines have great success reclaiming temporary roads. 77 Fed. Reg. 39586. Consequently, CRAs in some cases extend onto existing leases well beyond what

8

was provided in IRAs. *See* CRR-0154494 (FEIS Map 9, showing encroachment of CRAs on existing leases). While it is likely that existing operations are immunized from adverse effects by the grandfather provision of the CRR, 36 CFR § 294.48(a), the extended roadless protections associated with the CRR and CRAs, when decoupled from the North Fork Exception, unduly complicate ongoing operations in the North Fork Coal Mining Area. The coal industry would certainly have opposed revised boundaries without also promulgating the North Fork Exemption, had it been carried forward as an alternative examined in detail in the CRR FEIS.

And most importantly, the combination of new roadless boundaries and a vacated exception for coal mining operations in the North Fork Coal Mining Area was not carried forward in NEPA review. Effectively, this combination constitutes a hybrid of CRR FEIS Alternatives 1 and 2 in the North Fork Coal Mining Area. The CRR FEIS identified this as a potential alternative on a state-wide basis, but declined to analyze it in detail. CRR-0153302. The Forest Service reasoned that the hybrid was redundant with Alternative 1 and could be implemented under the existing 2001 Roadless Rule. *Id.* But the suggestion that it *could* be implemented under the 2001 Roadless Rule does not equate to a determination that such a multi-thousand acre modification would be exempt from NEPA or would not require more detailed review, particularly given the degree of controversy that even the 30 acre Exploration Plan has generated. The two sentence rationale in the CRR FEIS is not adequate under NEPA. Further, there is nothing in the CRR FEIS that suggests that the Forest Service *would* have chosen the hybrid rule in the North Fork Coal Mining Area if denied the opportunity to implement the North Fork Exception. The Court is thus left with a lack of any circumstances indicating an agency intent to proceed with the CRR boundary modifications in the North Fork Coal Mining Area in

9

the absence of the road-building exception, and the lack of any NEPA analysis to support that configuration of the rule.  Consequently, if the Court elects to vacate 36 C.F.R. 294.43(c)(1)(ix), it must also vacate the CRA boundaries in the North Fork Coal Mining Area, re-instating the 2001 Roadless Rule IRAs.

## II. CONCLUSION

Arch fully supports the relief requested by the Federal Defendants, with the proviso that any injunctive relief must be expressly tied to the challenged decisions.  In the event that the Court vacates 36 C.F.R. 294.43(c)(1)(ix), it must also vacate the CRAs and reinstate the 2001 Roadless Rule IRAs in the North Fork Coal Mining Area.

Respectfully submitted this 27th day of August, 2014.

**DORSEY & WHITNEY LLP**

s/ Stephen D. Bell _____
Stephen D. Bell
Scott P. Sinor
Dorsey & Whitney LLP
370 17th Street, Suite 4700
Denver, CO 80202-5647
Telephone:  (303) 629-3400
Facsimile:  (303) 629-3450
E-mail:  bell.steve@dorsey.com
         sinor.scott@dorsey.com

Michael R. Drysdale
Dorsey & Whitney LLP
50 South Sixth Street
Minneapolis, MN 55402
Telephone (612) 340-5652
Facsimile: (612) 340-2868
E-mail: drysdale.michael@dorsey.com

ATTORNEYS FOR INTERVENORS ARK LAND COMPANY AND MOUNTAIN COAL COMPANY.

**CERTIFICATE OF SERVICE**

I hereby certify that on august 27, 2014, i caused the foregoing document, INTERVENORS' BRIEF ON REMEDIES to be electronically filed with the clerk of the court using the CM/ECF system.  Notification of such filing will be sent to the following email addresses:

David B. Glazer
U.S. Department of Justice-CA-San Francisco
Environment & Natural Resources Division
301 Howard Street
San Francisco, CA 94105
Phone: (415) 744-6477
Fax: (415) 744-6476
Email: david.glazer@usdoj.gov

*Attorney for Defendants United States Forest Service, Bureau of Land Management, United States Department of the Interior, Daniel Jirón, Scott Armentrout and Ruth Welch*

Edward B. Zukoski
Jessica Townsend
Earthjustice
1400 Glenarm Place, Suite 300
Denver, CO 80202
(303) 623-9466
Fax: (303) 623-8083
tzukoski@earthjustice.org

*Attorneys for High Country Conservation Advocates, WildEarth Guardians, and Sierra Club*

John S. Most
Natural Resources Section
United States Department of Justice
601 D Street, N.W., Room 3536
P.O. Box 7611 Washington, D.C. 20044-7611
Tel: (202) 616-3353
Fax: (202) 305-0506 (fax)
Email: John.Most@usdoj.gov

*Attorneys for Defendants United States Forest Service et al.*

                                                            s / Karen Porter