**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-01723-RBJ

HIGH COUNTRY CONSERVATION ADVOCATES, et al.
　　　Plaintiffs,

v.

UNITED STATES FOREST SERVICE, et al.
　　　Defendants, and

ARK LAND COMPANY, INC., et al.
　　　Intervenor-Defendants.

_____

**PLAINTIFFS' BRIEF ON REMEDY**
_____

In its order of June 27, 2014, this Court suggested that the appropriate remedy for the numerous legal violations identified in that order was vacatur of the agency actions that violated the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA"). Order (Dkt. #91) at 35. The Court was correct. Vacatur is the default remedy set by the APA, and there is no reason to stray from that remedy here.[1]

**I.　VACATUR IS THE PRESUMPTIVE LEGAL REMEDY FOR APA VIOLATIONS.**

Under the APA, courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious . . . or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Supreme Court has stated that "[t]he [APA] requires federal courts to set aside federal agency action that is 'not in accordance with law.'" F.C.C. v. NextWave Pers.

---

[1] Per the Court's order, the Parties' counsel conferred, but were largely unable to agree on remedy.

1

Commc'ns Inc., 537 U.S. 293, 300 (2003). The Tenth Circuit has agreed.[2] In this context, "'[s]et aside' means vacate." Comcast Corp. v. F.C.C., 579 F.3d 1, 10 (D.C. Cir. 2009) (Randolph, J. concurring). Courts thus hold that vacatur is the "presumptively appropriate remedy for a violation of the APA," and the "ordinary" or "default" remedy.[3]

While courts retain equitable discretion to depart from vacatur to craft an alternate remedy for APA violations, they do so only in unusual and limited circumstances. In general, courts fashion other remedies where vacatur would thwart the objective of the law at issue or would cause unacceptable harm to the environment or public health.[4] And though some courts have applied a two-part test to identify the unusual circumstances in which an equitable remedy other than vacatur may be appropriate, the Tenth Circuit has not adopted this test.[5]

## II. COLORADO RULE'S NORTH FORK EXEMPTION SHOULD BE VACATED.

This Court should impose the default remedy of vacatur for the Forest Service's NEPA and APA violations in adopting the Colorado Roadless Rule's North Fork coal mining area

---

[2] See Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1573-74 (10th Cir. 1994); see also Forest Guardians v. Babbitt, 174 F.3d 1178, 1187-88 (10th Cir. 1999) (recognizing that as used in the APA, "shall means shall").

[3] See, e.g., Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1405 (9th Cir. 1995) (court "[o]rdinarily" invalidate an agency rule); Sierra Club v. Van Antwerp, 719 F. Supp. 2d 77, 78 (D.D.C. 2010) (vacatur is "presumptively appropriate remedy"); Reed v. Salazar, 744 F. Supp. 2d 98, 119 (D.D.C. 2010) (vacatur is "default" remedy).

[4] See, e.g., Natural Res. Def. Council v. EPA, 489 F.3d 1250, 1265 (D.C. Cir. 2007) (Rogers, J. concurring in part and dissenting in part) ("the court has traditionally not vacated the rule if doing so would have serious adverse implications for public health and the environment"); Idaho Farm Bureau, 58 F.3d at 1405-06 (retaining Endangered Species Act ("ESA") listing decision during remand to avoid the species' potential extinction).

[5] See, e.g., Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (weighing seriousness of legal violation and disruption vacatur might cause). As shown, infra, even if this Court applies here the test used in Allied-Signal, vacatur is still appropriate because the NEPA violations are serious, and vacatur would cause minimal disruption.

exemption, 36 C.F.R. § 294.43(c)(1)(ix). Courts have regularly vacated other Forest Service rules or provisions governing roadless lands adopted in violation of the APA and/or other environmental laws. For example, in Organized Village of Kake v. U.S. Department of Agriculture, 776 F. Supp. 2d 960, 976 (D. Alaska 2011), rev'd on other grounds, 746 F.3d 970 (9th Cir. 2014), the court found a Forest Service rule that exempted the Tongass National Forest from the national Roadless Area Conservation Rule (National Rule) lacked record support. The court vacated the exemption and reinstated the National Rule's application to the Tongass. Id. at 976-77. Other courts similarly vacated Forest Service roadless rules found in violation of law.[6]

While Defendants may argue that this Court must either vacate the entire Colorado Rule or leave it completely intact, the Court need not take such an "all-or-nothing" approach. Courts routinely vacate unlawful portions of rules or statutes. See, e.g., Natural Res. Def. Council v. E.P.A., 749 F.3d 1055, 1057 (D.C. Cir. 2014) (vacating portion of Clean Air Act rule found unlawful while upholding remainder of rule). In this case, vacating the North Fork exemption is the appropriate remedy because the NEPA violations spring solely from the Forest Service's failure to disclose the climate pollution impacts of the North Fork exemption.

Further, the Colorado Rule's severability clause, 36 C.F.R. § 294.48(f), creates a presumption that the North Fork exemption can be excised from the remainder of the Rule. This clause places a heavy burden on Defendants, who must provide "strong evidence" that the Forest Service would have preferred no Colorado Rule at all – and thus a return to the more restrictive

---

[6] See Wyoming v. U.S. Dep't of Agric., 570 F. Supp. 2d 1309, 1355 (D. Wyo. 2008), rev'd, 661 F.3d 1209 (10th Cir. 2011) (vacating National Rule due to NEPA and Wilderness Act violations); California ex rel. Lockyer v. U.S. Dep't of Agric., 459 F. Supp. 2d 874, 919 (N.D. Cal. 2006), opinion clarified, No. C05-03508 EDL, 2006 WL 2827903 (N.D. Cal. Oct. 3, 2006), aff'd, 575 F.3d 999 (9th Cir. 2009) (vacating rule meant to replace National Rule due to NEPA and ESA violations).

National Rule – to a Colorado Rule without the North Fork exemption.  See Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 686 (1987) (requiring "strong evidence" to overcome presumption of severability where law includes severability clause); see also Preminger v. Sec'y of Veterans Affairs, 517 F.3d 1299, 1310 (Fed. Cir. 2008) (explaining that severability analysis applies to regulations and statutes alike).  Plaintiffs found no record evidence that the Forest Service would have abandoned the entire Colorado Rule – with its myriad provisions weaker than the National Rule (such as those opening 250,000 acres of roadless lands to logging to protect communities and municipal water supply systems from wildfires)[7] – in favor of the stricter National Rule if the agency were unable to adopt the North Fork exemption.[8]

And while Defendants may press for a different result, there is no reason to depart from the ordinary remedy of vacatur, given that vacatur serves NEPA's fundamental purpose of requiring agencies to look before they leap.[9]  Congress designed NEPA to ensure that "important effects will not be overlooked or underestimated only to be discovered after resources have been committed or the die otherwise cast."  Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 349 (1989) (emphasis added).  An EIS must "not be used to rationalize or justify decisions

---

[7] See 77 Fed. Reg. 39,576, 39,578 (July 3, 2012) (CRR-160281 at 160284); see also 36 C.F.R. §§ 294.42(c), 294.43(c), 294.44(c) (provisions allowing logging within Colorado roadless areas).

[8] Further, even if this Court concludes that the entire Colorado Rule decision is flawed as a result of the NEPA violations concerning the North Fork exemption, the Court can still vacate only the exemption as an exercise of its equitable discretion to tailor a narrow remedy.  See Stichting Mayflower Recreational Fonds v. Newpark Res., Inc., 917 F.2d 1239, 1245 (10th Cir. 1990) (district court has "considerable discretion to fashion an appropriate equitable remedy").

[9] See, e.g., Ctr. for Food Safety v. Vilsack, 734 F. Supp. 2d 948, 953 (N.D. Cal. 2010) (concluding "[t]he fact that the Court has already found that [the agency] failed to fully consider the potential consequences of [its decision] and that Plaintiffs have shown that [the decision] may significantly affect the environment demonstrates that [the agency's] errors are not minor").

already made." 40 C.F.R. § 1502.5.[10] Here, not vacating the North Fork exemption would leave the agency effectively committed to a provision whose impacts the agency failed to properly evaluate – in essence, reaching the verdict before the trial.[11] By contrast, vacatur would ensure that the Forest Service took the required "hard look" before making a decision, increasing the chance that the agency would act on the information to reduce climate pollution or to limit harm to roadless forests.

Vacatur is particularly appropriate given the seriousness of the Forest Service's NEPA violations. This Court held the Colorado Rule FEIS's analysis of greenhouse gas ("GHG") emissions from coal mining made possible by the North Fork exemption was "arbitrary" because the FEIS "offer[ed] detailed projections of a project's upside while omitting a feasible projection of the project's costs." Order (Dkt. #91) at 26. This Court also found that the Agency's explanations for ignoring the impacts of coal combustion made "no sense," were "unsupported by the record," and constituted "anything but a 'hard look.'" Id. at 28-29. These fundamental errors go to the heart of the Forest Service's analysis of the North Fork exemption and support vacatur. See Nat'l Ski Areas Ass'n v. U.S. Forest Serv., 910 F. Supp. 2d 1269, 1286 (D. Colo. 2012) (defendants' "significant violations of the APA . . . cut heavily" in favor of vacatur).[12]

---

[10] See also Natural Res. Def. Council v. Houston, 146 F.3d 1118, 1129 (9th Cir. 1998) (vacating agency decision because of NEPA violation rather than entering injunction because "[w]here contracts have already been entered into, the opportunity to 'choose' [among alternatives] has been eliminated . . . . Therefore, an injunction would not serve any purpose if the contracts are not invalidated.").

[11] Leaving the North Fork exemption in place also results in a "bureaucratic steamroller" that courts have held threatens irreparable harm in the injunction context. See Pls.' PI Memo. (Dkt. #71-1) (Apr. 9, 2014) at 18-20.

[12] Any suggestion from Defendants that the NEPA errors will be easily fixed and the same decision made again should not weigh against vacatur. See Ctr. for Food Safety, 734 F. Supp. 2d

Nor can Defendants claim that the ordinary remedy of vacatur will have impacts so severe that another remedy is warranted. The North Fork exemption affects only 19,000 acres of forest; the remainder of the Colorado Rule will govern 4.2 million acres of roadless lands. Intervenor Ark Land Co. et al. ("Arch") itself has indicated that the Exploration Plan injunction merely "complicates" long-term planning for the West Elk mine.[13] And to Plaintiffs' knowledge, there is only one other pending road construction proposal dependent on the North Fork exemption, submitted by the Elk Creek mine. But Elk Creek is currently closed, and so a remedy that may impact that proposal is unlikely to disrupt that mine's already idle operations.[14]

Finally, Defendants may assert that Plaintiffs are limited only to site-specific relief, and that vacatur of any portion of the Colorado Rule is simply unavailable. A recent decision by the District Court for the District of Columbia specifically rejected this argument about the Colorado Rule.[15] Similarly here, Plaintiffs' site-specific challenge to the Exploration Plan clearly allows them to attack the North Fork exemption's validity and to have that provision properly set aside.

---

at 953 (rejecting a similar argument against vacatur and noting that "[the agency's] apparent position that it is merely a matter of time before they reinstate the same deregulation decision, or a modified version of this decision, and thus apparent perception that that conducting the requisite comprehensive review is a mere formality, causes some concern that [d]efendants are not taking this process seriously.").

[13] Duffy Hayes, Judge cites climate change in coal ruling, Grand Junction Sentinel (June 28, 2014), attached as Ex. 1. Arch's statement that an injunction merely "complicates" long-term planning also undercuts Arch's unpersuasive argument, made in its injunction opposition, that the company may be forced to bypass the Lease Modifications coal if it cannot mine there immediately. See Pls.' PI Reply (Dkt. #83) (May 20, 2014) at 14-19.

[14] Press Release, Oxbow, Elk Creek Coal Mine temporarily idled, (Dec. 2013), available at http://www.oxbow.com/Additional_Pages_Press_Releases_Dec_02,_2013.html (last visited Aug. 27, 2014), attached as Ex. 2.

[15] See Ark Initiative v. Tidwell, No. 14-633 (JEB), 2014 WL 4059878, at *10 (D.D.C. Aug. 18, 2014) ("Even if [plaintiffs] were barred from bringing an 'independent' challenge to the

### III.  THE LEASE MODIFICATIONS DECISIONS SHOULD BE VACATED.

The Court should also impose the ordinary remedy of vacatur for the Agencies' NEPA and APA violations in adopting the Lease Modifications. Other courts have vacated lease amendments and contracts for violations of the APA and environmental laws including NEPA. For example, in Pit River Tribe v. U.S. Forest Service, 469 F.3d 768, 788 (9th Cir. 2006), the Ninth Circuit held that because the Forest Service violated NEPA and historic preservation laws in approving extensions of geothermal leases, the "lease extensions … must be undone."[16] Here, the Lease Modifications similarly must be vacated due to the Agencies' NEPA violations.[17] Further, given that the Lease Modifications could not have been approved but for the prior adoption of the similarly invalid North Fork exemption, both decisions should be vacated. See Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs, 486 F.3d 638, 654 (9th Cir.

---

Colorado Rule, it may still attack that regulation—and have it invalidated as unlawful—in the context of a challenge to one of the Rule's specific applications.").

[16] See also Houston, 146 F.3d at 1129 (upholding district court decision to rescind contracts where agency violated ESA); Bob Marshall Alliance v. Lujan, 804 F. Supp. 1292, 1297 (D. Mont. 1992) (cancelling petroleum leases, rather than merely suspending them, for "substantial procedural violations" of the ESA and NEPA).

[17] Some courts have declined to vacate leases where the agency has violated NEPA or other environmental laws, but those cases are either distinguishable or unpersuasive. See Colo. Envtl. Coal. v. Salazar, 875 F. Supp. 2d 1233, 1259 (D. Colo. 2012) (remanding without canceling oil and gas leases adopted in violation of NEPA because court held plaintiffs' claims challenged a programmatic EIS and "not … the decision to issues leases;" here, Plaintiffs challenged the lease modifications decisions themselves); Native Vill. of Point Hope v. Salazar, 730 F. Supp. 2d 1009, 1019 (D. Alaska 2010) (remanding lease sale decision adopted in violation of NEPA without addressing caselaw on vacatur); Mont. Wilderness Ass'n v. Fry, 408 F. Supp. 2d 1032, 1038 (D. Mont. 2006) (suspending leases despite violating NEPA and other laws because rescinding leases would have effect of preventing lessees from ever bidding again on parcels at issue; here, nothing prevents Arch Coal from seeking lease modifications upon remand); see also N. Cheyenne Tribe v. Hodel, 851 F.2d 1152, 1157 (9th Cir. 1988) (finding district court did not abuse discretion in suspending rather than voiding coal leases adopted in violation of NEPA, but not dismissing vacatur as a proper remedy).

2007) (holding that where one project was "critically premised" on another held unlawful, both should be vacated), rev'd on other grounds sub nom. Coeur Alaska, Inc. v. Se. Alaska Conservation Council, 557 U.S. 261 (2009).

Adopting the default remedy of vacating the Lease Modifications, as with vacatur of the North Fork exemption, will further NEPA's purposes and protect the environment. See supra at 4-5. The Forest Service's and BLM's legal violations regarding the Lease Modifications were serious. This Court held that the Agencies' FEIS "was arbitrary and capricious," violating NEPA by failing to disclose the effects of GHG pollution likely to result from coal mining and coal combustion by failing to address the social cost of carbon. Order (Dkt. #91) at 16-17. The Court concluded that the Agencies' failure to disclose climate impacts was "more than a mere 'flyspeck'" because "[t]he agencies expressly relied on the anticipated economic benefits of the Lease Modifications in justifying their approval," but ignored the environmental and social costs of GHG pollution. Id. at 19. The Agencies' failure to address the costs of carbon thus went to the core of the NEPA analysis.

Further, none of the reasons that might weigh against vacatur of the Lease Modifications are present. This is not a case where vacating the decision would imperil an endangered species, thwart operation of environmental law, or halt a nearly complete project.[18] Nor is this a case where vacatur may be disfavored because "the proverbial 'egg has been scrambled and there is no apparent way to restore the status quo ante.'" Defenders of Wildlife v. Jackson, 791 F. Supp. 2d 96, 118 (D.D.C. 2011) (quotations omitted). No construction on the leases has occurred. The

---

[18] See, e.g., Cal. Communities Against Toxics v. U.S. EPA, 688 F.3d 989, 993-94 (9th Cir. 2012) (finding that "[t]he delay and trouble vacatur would cause are severe" in part because vacating a Clean Air Act rule could cause "the very danger the Clean Air Act aims to prevent," and would halt construction of nearly complete power plant); see also note 4, supra.

Lease Modifications coal is still in the ground; the Agencies could decide to make it available later after complying with law. Lease modifications are not subject to competitive bidding, so Arch is not at risk of losing the coal to another firm. Vacating the leases will simply restore Arch and the Agencies to the position they were in the day the Lease Modifications were signed. Upon vacatur, Arch can also be refunded its modest bonus bid and rent payments, which according to BLM public records total less than $500,000.[19]

If this Court nonetheless determines that vacatur is not appropriate, the Court should at a minimum enter an injunction suspending the Lease Modifications, and prohibiting all activities authorized by the Modifications. If the Court declines vacatur, an injunction would be appropriate because Plaintiffs succeeded on the merits and meet the other tests for injunctive relief. See Pls.' PI Memo. (Dkt. #71-1). Such an injunction should:

(1) Enjoin all Defendants from undertaking any construction, bulldozing, or other on-the-ground, above-ground or below-ground disturbing activity authorized by, or made possible pursuant to, Lease Modifications COC-1362 and COC-67232;

(2) Order that, in any NEPA analysis prepared in response to the errors identified in this Court's order of June 27, 2014, the Agencies may not consider Arch's existing financial investments in the Lease Modifications;[20] and

(3) Order that the injunction shall remain in place unless and until: the Agencies remedy the errors identified in this Court's order of June 27, 2014, and issue any new decisions reliant on such analyses; the Agencies move to dissolve the injunction based on their purported compliance with the Court's order of June 27, 2014 and NEPA; the Plaintiffs have a reasonable opportunity to respond to such motion; and the Court issues an order dissolving the injunction.[21]

---

[19] See Declaration of Jeremy Nichols (Aug. 27, 2014), attached as Ex. 3 (describing BLM public records of Arch's payments related to the Lease Modifications).

[20] In Northern Cheyenne Tribe, 851 F.2d at 1157, the Ninth Circuit provided such a remedy, "specifically direct[ing] the Secretary [of Interior] not to consider [on remand] the investments [in coal leases] made on the basis of a defective EIS."

[21] See, e.g., Mont. Wilderness Ass'n, 408 F. Supp. 2d at 1039-40 (ordering similar injunction).

**IV. THE EXPLORATION PLAN SHOULD BE VACATED AND ENJOINED.**

The Court's order on the merits ordered that "[t]he government defendants' approval of the Exploration Plan is vacated" and enjoined Arch "from proceeding with the Exploration Plan." Order (Dkt. #91) at 36. The Parties agree in principle that vacation and injunction are the proper remedy for Federal Defendants' NEPA violations, but disagree on the precise wording of such an order. Plaintiffs urge the Court to adopt the following language to ensure that both of the Federal Defendants' agency actions – BLM's decision and the Forest Service's concurrence (a prerequisite for BLM's decision) – are vacated:

> "The Federal Defendants' June 27, 2013 approvals of the Sunset Trail Area Coal Exploration Plan are vacated, and any and all actions pursuant to those approvals are permanently enjoined."

Respectfully submitted August 27, 2014.

/s/ *Edward B. Zukoski*
EDWARD B. ZUKOSKI, Earthjustice
JESSICA TOWNSEND, Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
Tel: (303) 623-9466   Fax: (303) 623-8083
tzukoski@earthjustice.org; jtownsend@earthjustice.org

*Attorneys for Plaintiffs High Country Conservation Advocates et al.*

**CERTIFICATE OF SERVICE**

I certify that on August 27, 2014, I electronically filed the foregoing PLAINTIFFS BRIEF ON REMEDY with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record at the following e-mail addresses:

David B. Glazer (david.glazer@usdoj.gov); John S. Most (John.Most@usdoj.gov)
    Attorneys for Defendants U.S. Forest Service et al.
Michael Drysdale (drysdale.michael@dorsey.com); Scott P. Sinor (sinor.scott@dorsey.com)
    Attorneys for Intervenor-Defendants Ark Land Company et al.

*/s/ Edward B. Zukoski*