IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 13-cv-01723-RBJ

HIGH COUNTRY CONSERVATION ADVOCATES,
WILDEARTH GUARDIANS, and SIERRA CLUB,

      Plaintiffs,

v.

UNITED STATES FOREST SERVICE,
UNITED STATES DEPARTMENT OF AGRICULTURE,
UNITED STATES BUREAU OF LAND MANAGEMENT,
UNITED STATES DEPARTMENT OF THE INTERIOR,
DANIEL JIRÓN, in his official capacity as Regional Forester for the U.S. Forest Service's
Rocky Mountain Region,
SCOTT ARMENTROUT, in his official capacity as Supervisor of the Grand Mesa,
Uncompahgre, and Gunnison National Forests, and
RUTH WELCH, in her official capacity as the Bureau of Land Management's Colorado State
Office Acting Director,

      Defendants, and

ARK LAND COMPANY, INC., and
MOUNTAIN COAL COMPANY, L.L.C.,

      Intervenor-Defendants.

---

ORDER

---

On June 27, 2014, this Court issued an order finding that the Forest Service and Bureau

of Land Management (collectively "federal defendants") failed to comply with the National

Environmental Policy Act ("NEPA") in three interrelated agency actions: the promulgation of

the Colorado Roadless Rule with an exemption for the North Fork Valley, the issuance of lease

modifications to permits held by intervenor-defendants Ark Land Company, Inc. and Mountain

Coal Company, L.L.C. (collectively "Arch Coal"), and the approval of an Exploration Plan authorizing road building and drilling in the lease modification area. ECF No. 91. The Court postponed its decision on the appropriate remedies for these violations until the parties had a chance to confer and, if necessary, submit additional briefing on the topic. The parties have since filed their briefs, and the Court is prepared to issue a final order in this administrative appeal.

## I.      Applicable Law

Vacatur is the normal remedy for an agency action that fails to comply with NEPA. *See* 5 U.S.C. § 706(2)(A) (directing reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-14 (1971) ("In all cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements.").

The APA does not, however, deprive reviewing courts of traditional equitable powers when fashioning a remedy. *See* 5 U.S.C. § 702 (noting that nothing in the Administrative Procedure Act deprives reviewing courts of the power to apply equitable factors to its remedies analysis); *see also* Ronald M. Levin, *"Vacation" at Sea: Judicial Remedies and Equitable Discretion in Administrative Law*, 53 Duke L.J. 291, 374-75 (2003) (discussing the importance of remand without vacation as a remedy in administrative appeals, but noting that it is a departure from the norm and urging caution in its use). Some circuits employ a two-step test to determine whether equity counsels against vacatur, although it appears that the Tenth Circuit has not specifically addressed whether such a test applies in this circuit. *See, e.g.*, *Allied-Signal, Inc.*

*v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (weighing the severity of the legal violation against the potential negative effects of vacatur).[1]

## II.   Remedies in This Case

### a.   Exploration Plan

The parties agree, at least in principle, that the Sunset Trail Exploration Plan should be vacated.  The defendants do not explain whether or how they object to the specific language proffered by plaintiffs.  Therefore the Court adopts the plaintiffs' language.

### b.   Lease Modifications

Again, vacatur appears to be the typical remedy here.  Defendants request a temporary injunction on activities taken pursuant to the lease modifications pending compliance with the NEPA violations identified in the Court's previous order.  The parties have identified several cases where leases or lease modifications violated environmental review statutes.  In some cases the reviewing court vacated the underlying leases.  *See, e.g.*, *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 788 (9th Cir. 2006).  In others the court merely temporarily enjoined activity pursuant to the lease while the responsible agency rectified other errors on remand.  *See Connor v. Burford*, 848 F. 2d 1441, 1460-61 (9th Cir. 1988); *Native Village of Point Hope v. Salazar*, 730 F. Supp. 2d 1009, 1019 (D. Alaska 2010); *Mont. Wilderness Ass'n v. Fry*, 408 F. Supp. 2d 1032, 1038 (D. Mont. 2006)

---

[1] Defendants rely heavily on *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) in their briefs. While *Monsanto* undoubtedly controls where a plaintiff is "seeking a permanent injunction," the case is largely inapplicable here. *Id.* at 156.  In *Monsanto*, neither party challenged the District Court's vacatur of the agency's decision to completely deregulate the Round-up Ready Alfalfa ("RRA").  *Id.* ("Because petitioners and the Government do not argue otherwise, we assume without deciding that the District Court acted lawfully in vacating the deregulation decision.").  Rather on appeal the case centered on whether the District Court's *additional remedial measures*—enjoining the agency from deregulating RRA pending completion of an EIS and enjoining any planting of RRA in the meantime—were permissible.  In the instant case, the Court sees no need to enter such sweeping remedial measures, and indeed the plaintiffs do not ask for any.  Rather the Court will hew to the narrow remedy of vacating each offending action and remanding to the agency for further proceedings.

While it appears that this Court has a great deal of discretion in crafting a remedy, many of the cases cited by the defendants in support of their argument against vacatur involved materially different facts.  In *Colorado Environmental Coalition v. Office of Legacy Management*, 819 F. Supp. 2d 1193, 1217 (D. Colo. 2001) *amended by* 2012 WL 628547 (D. Colo. Feb. 27, 2012), the court left in place leases issued pursuant to a flawed programmatic planning document but also explained that the plaintiffs had failed to demonstrate why the decision to issue the leases without further review was arbitrary and capricious.  In the instant case, the Court has already concluded that the lease modifications themselves—not just the programmatic exception to the CRR—violated NEPA.  Defendants' citation to *Colorado Environmental Coalition v. Salazar*, 875 F. Supp. 2d 1233 (D. Colo. 2012) is similarly unpersuasive.  In that case, Chief Judge Krieger declined to vacate the leases at issue because of concerns that the decision to issue the leases was not challenged (as it was in the instant case) and that not all the parties that would be affected by vacatur of the leases were before the court (not a concern in the instant case).  *Id.* at 1259.[2]

Finally, in the instant case, where several interrelated agency decisions all contained significant NEPA violations, I view skeptically any argument that a simple remand and temporary injunction is all that is needed to remedy the agencies' errors.  This case is more like a Gordian knot that needs cutting than a simple tangle that the government can untie with a little

---

[2] Defendants offer a slew of other cases—not necessarily involving leases or lease modifications—purportedly demonstrating that the equities favor something less than vacatur in this case.  They are likewise distinguishable as presenting much clearer facts in favor of remand without vacation than are present in the instant case.  *See California Communities Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 993-94 (9th Cir. 2012) (vacatur and resulting delay would cause much needed powerplant to stay off line and might cause blackouts and additional air pollution due to the use of diesel generators); *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 756 (D.C. Cir. 2002) (noting that the agency might never recover previously collected fees if the underlying rule was vacated, suggesting that the "egg has already been scrambled and there is no apparent way to restore the status quo ante"); *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (noting that the agency might not be able to recoup fees under a replacement rule).

extra time.  I am also not sure that the agency's decision on remand is a foregone conclusion.

The agencies might, depending on how they calculate the effect of greenhouse gas emissions,

decide to forgo granting the lease modifications altogether.  Then again, maybe they will reach

the same conclusion they reached before this appeal.  The outcome is not clear, and while it is

not the Court's responsibility to mandate a particular outcome, NEPA's goals of deliberative,

non-arbitrary decision-making would seem best served by the agencies approaching these actions

with a clean slate.  Because I do not find that equitable considerations tip the scales in favor of a

temporary injunction, and because I believe vacation will best serve the deliberative process

mandated by NEPA, the Court orders that the lease modifications be vacated.

Arch Coal writes separately to emphasize that it would like a narrowly tailored injunction

against the lease modifications such that the company will be permitted to perform activities that

do not trigger the CRR.  Arch provides no details about these activities, nor does it explain how,

if the North Fork Exception to the CRR violated NEPA, *any* activity pursuant to the lease

modification could avoid relying upon the offending part of the CRR.  After all, without the

exception, it is not clear whether the agency defendants would ever approve lease modifications

in the North Fork Valley.  The main purpose of requiring the agencies to comply with NEPA is

to give them a chance to perform a complete, non-arbitrary review of the exception.  How the

agency comes out in that review—which is an outcome that no one can predict at this time—will

determine how the agency will approach subsidiary decisions like the decision to grant Arch's

lease modification application.  Absent more detail about the activities that Arch wishes to

pursue on the lease modifications, I cannot assume that there are any activities that are so

divorced from the CRR that the agencies are guaranteed to approve them in their forthcoming

environmental analysis.  Therefore the Court finds that vacatur of the agencies' approvals of the lease modifications is the appropriate remedy in this case.

### c.  <u>Colorado Roadless Rule ("CRR")</u>

Again, vacatur appears to be the standard remedy in this case given that the Court has already found that the North Fork Exception to the CRR is not compliant with NEPA.  That said, equitable considerations might be especially weighty when deciding how to deal with such a carefully crafted compromise.  Plaintiffs seek severance of the North Fork Exception and vacation of that provision only.  Federal defendants ask the Court to leave the exception in place and to refrain from enjoining the CRR except insofar as the Court orders the agencies to let the plaintiffs know of any ground disturbing activities in the exception area.

Yet again, I am unconvinced that the equities require something less than vacatur of the North Fork Exception, 36 C.F.R. § 294.43(c)(1)(ix).  The CRR contains a severability clause, 36 C.F.R. § 294.48(f), suggesting the possibility that the agencies would prefer severance of the exception rather than invalidation of the entire CRR.

In the Tenth Circuit, a reviewing court "may partially set aside a regulation if the invalid portion is severable. A regulation is severable if the severed parts operate entirely independently of one another, and the circumstances indicate the agency would have adopted the regulation even without the faulty provision." *Arizona Pub. Serv. Co. v. U.S. E.P.A.*, 562 F.3d 1116, 1122 (10th Cir. 2009) (internal quotation marks omitted).

The defendants appear to concede that the CRR could operate independently without the North Fork Exception.  Their position on whether the agencies would have promulgated the rule without the exception is less clear, however.  At times, they suggest that the complexity of the CRR and the political wrangling required to create it demonstrate that the North Fork Exception

is a sort of linchpin holding together the entire rule.  They offer no specific evidence that the agencies viewed the CRR or the exemption in this way.  They also, at times, appear to argue the opposite.  *See* ECF No. 98 at 7 ("Overall, the circumstances do not indicate that the Forest Service would have abandoned or substantially modified the CRR as applied to areas of the state outside the North Fork Coal Mining Area, in the absence of the North Fork Exception.").

I conclude that the severability clause creates a presumption that the North Fork Exception is severable, that the CRR could operate independently of the exception, and that while there is mixed evidence regarding whether the agency would have wished the CRR to operate without the exception, nothing in the record indicates a strong preference that the CRR be totally abandoned without the exception.[3]  Therefore the Court orders the severance and vactur of the North Fork Exception.

## III.  Conclusion

Therefore the Court orders the following:

1.  The federal defendants' June 27, 2013 approvals of the Sunset Trail Area Coal Exploration Plan are vacated, and any and all actions pursuant to those approvals are permanently enjoined.

2.  The federal defendants' August 2, 2012 and December 27, 2012 approvals of Arch Coal's lease modifications are vacated.

3.  The North Fork Exception to the Colorado Roadless Rule, 36 C.F.R. § 294.43(c)(1)(ix), is severed from the remainder of the CRR and is vacated.

---

[3] Defendants advance a related argument that vacatur of the exception would be inequitable because such an action by the Court would cause problems operating on the parent leases.  I find this concern overblown given the presence of a grandfather clause in the CRR, 36 C.F.R. § 294.48(a), (b), exempting permits, leases, and project decisions made prior to July 3, 2012.  I note also that defendants never explain what these potential problems on the parent leases might be or how they cannot be saved by the grandfather clause.

DATED this 11th day of September, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge